# TAB 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JAMES GOULD,

    Plaintiff,

vs.

COUNTY OF ROCKLAND, SUSAN SHERWOOD,
sued in her individual capacity, JACQUELINE STORMES,
sued in her individual capacity, KATHLEEN
TOWER-BERNSTEIN, sued in her individual capacity,
JILL LAGNADO, sued in her individual capacity,

    Defendants.
-------------------------------------------------------------x

07 CIV. 2837

**COMPLAINT**

BRIEANT

PLAINTIFF, by and through his counsel, Michael H. Sussman, Esq., hereby avers against defendants as follows:

**PARTIES**

1. Plaintiff is a former employee of the County of Rockland Department of Probation who resides within this judicial district.

2. Defendant County of Rockland is a municipal corporation which conducts business within this judicial district and may sue and be sued in this forum.

3. At all relevant times, defendant Susan Sherwood served as Chief of Staff for Rockland County Executive C. Scott Vanderhoef; she resides in this judicial district.

4. At all relevant times, defendant Jacqueline Stormes was Director or Acting Director of the Rockland County Department of Probation; she resides in this judicial district.

5. At all relevant time, defendant Kathleen Tower-Bernstein was a supervising probation officer employed by the Rockland County Department of Probation.

6. At all relevant times, defendant Jill Lagnado, plaintiff's immediate supervisor, served as a supervising probation officer [for the Juvenile unit] in Rockland County's Department of Probation.

## JURISDICTION

7. As plaintiff alleges that defendants, and each of them, violated federally protected rights, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331 and 1343 (3) and (4) and 42 U.S.C. secs. 1983 and 1988.

## FACTUAL ALLEGATIONS

8. Plaintiff commenced working as a custodian for the defendant County on January 21, 1977.

9. Plaintiff worked as a custodian for one year.

10. In January 1978 through July 1984, plaintiff worked as a mental health worker and case manager for the Rockland County Department of Mental Health.

11. In July 1984, plaintiff commenced working as a probationary trainee in the Juvenile Unit of the Rockland County Department of Probation.

12. One year later, plaintiff became a probation officer within the same department.

13. Plaintiff remained a probation officer between July 1985 and July 1989, when he commenced an 18 month leave of absence outside of government.

14. In February 1991, defendant County re-employed plaintiff as a Probation Officer, a civil service position.

15. In April 2003, defendant Stormes promoted plaintiff from an eligibility list of the position of senior probation officer.

16. Plaintiff's probation lasted six month, at which time he became a tenured senior probation officer.

17. Defendant Lagnado served as plaintiff's supervisor following his April 2003 promotion.

18. In December 2002, the Probation Department held a Christmas Party during work hours.

19. After the party, plaintiff complained to defendant Tower-Bernstein, the department's sexual harassment officer, that he was offended that a female employee had groped him in public.

20. Defendant Tower-Bernstein laughed off this complaint and did not request that plaintiff fill out any complaint form.

21. After plaintiff's promotion, one of his subordinates complained that a colleague had sexually harassed her, been found to have so behaved and refused to attend mandated counseling with no consequence.

22. This subordinate also complained to plaintiff that defendants Stormes and Sherwood had recommended that this employee be appointed as a trustee at Rockland Community College.

23. After plaintiff received this complaint, two other staff members complained that at the December 2002 Christmas Party, they had been subjected to racial name-calling clearly prohibited by departmental and County policy and that their antagonist had not been disciplined.

24. A fourth employee indicated to plaintiff that he too had been groped at the Christmas Party and asked plaintiff to seek redress for him.

25. The events recounted in paragraphs 21-24 all occurred between June-August 2003.

26. After hearing these complaints, plaintiff again spoke with defendant Tower-Bernstein and indicated that these subordinates were upset that the County had not taken any remedial action.

27. Again, in the summer of 2003, defendant Tower-Bernstein brushed plaintiff aside and questioned why anyone would be offended.

28. In November 2003, defendant county held a training session for plaintiff's department.

29. When the trainer began verbally attacking one of plaintiff's colleagues, plaintiff interceded and defended his colleague.

30. That day, defendant Tower-Bernstein told plaintiff that his intercession was the wrong move and stated that plaintiff needed to "learn how to play the game" and that he "better not piss off the County Executive's Office anymore."

31. In March 2004, plaintiff and another co-worker went to see defendant Stormes to arrange an annual St. Patrick's Day party.

32. Defendant Stormes disallowed the party and stated that "Irish people don't know how to behave themselves at a party," a reference to the 2002 Christmas Party.

33. Plaintiff responded that he had raised numerous complaints after that party to management without response.

34. In March 2004, defendant Tower-Bernstein told plaintiff that management did not want him to bring complaints to its attention, but wanted him simply to do his job.

35. This followed plaintiff's reminding Tower-Bernstein that she was the department's sexual harassment officer and had never acted on complaints made about the December 2002

4

party.

36. On or about April 14, 2004, defendant Lagnado denied plaintiff his request to leave a training session an hour early to attend a medical appointment for his son.

37. In or about April 23, 2004, plaintiff went to see defendant Sherwood.

38. Plaintiff told defendant Sherwood that he had strong concerns about illegal departmental practices going on upstairs, a reference to the Probation Department.

39. Sherwood became irate, told him to stop being a cry baby, go upstairs and be happy he had a job.

40. On Saturday, April 24, 2004, plaintiff was in Cortland, New York with his daughter for a basketball competition.

41. While in Cortland, plaintiff asked a young man for directions to a gay bar as he wanted to pursue two men who had harassed him.

42. Plaintiff initiated no sexual contact with the young man he asked for directions.

43. On Wednesday, April 28, 2004, defendants suspended plaintiff for failing to attend the second day of a training session. This followed the New York State Probation Trainer's advice to plaintiff at the first day of training that there were other days available to make up the second day.

44. In an administrative decision unreviewed by any court, in April 2005, plaintiff was found guilty of insubordination on this charge and lost seven and one-half months pay.

45. In November 2005, defendants County and Stormes filed disciplinary charges claiming that plaintiff had engaged in inappropriate conduct when he allegedly propositioned an under-age youth in Cortland, New York on April 24, 2004.

46. In another decision unreviewed by any court, in July 2006, a hearing officer found plaintiff guilty of offenses relating to this incident and the County terminated his employment effective November 2005.

47. Defendant Sherwood directed the county's independent investigation into the Cortland County incident.

48. After the Cortland County District Attorney's office declined to pursue criminal charges against plaintiff, upon defendants' instigation and substantial pressure, that office instigated criminal charges against plaintiff.

49. Critical to this pressure were false comments made to Cortland police officers, the DA and the boy's family by county investigators, Cooney and Moody, to the effect that the County, referring to the individual defendants, had "suspicions" about plaintiff for a long time.

50. Plaintiff pled guilty to a violation to resolve these criminal charges.

51. During the course of its investigation into plaintiff and at the instance and direction of defendant Sherwood, defendant County obtained, without any notice to plaintiff or his consent, his personal and cell phone records.

52. During the course of its investigation into plaintiff, defendant County spoke with numerous past clients who plaintiff served.

53. These past clients uniformly denied that plaintiff engaged in any sexually untoward or inappropriate conduct toward them.

54. During the course of its investigation into plaintiff, defendant County and its agents learned that the account provided by the alleged victim of plaintiff's conduct in Cortland County had provided substantially inconsistent versions of events.

6

55. Despite knowing this, defendants County and Stormes brought disciplinary charges against plaintiff.

56. Before commencing its investigation of the events in Cortland, defendant County, acting through defendant Stormes, asked plaintiff for his version of events.

57. In making this request, defendant Stormes never suggested that she would or might share plaintiff's writing with police authorities in Cortland.

58. Without any notice to plaintiff and without obtaining his consent, defendants Stormes and Sherwood forwarded a copy of plaintiff's statement to police authorities in Cortland.

59. In prosecuting plaintiff, defendants pressured plaintiff's union to agree to hold the administrative hearing in Cortland, New York.

60. The plain language of the contract stated that any such hearing be held on property of the County of Rockland, in Rockland County.

61. Despite the contractual requirement that both parties select the hearing officer and before plaintiff even had approved legal counsel, defendant County selected the hearing officer for plaintiff's second disciplinary hearing.

62. Defendants accorded plaintiff the harsh treatment they did in retaliation for his protected first amendment activity.

63. In going to management on behalf of employees who were complaining about sexual harassment and racial/ethnic name-calling, plaintiff sought to vindicate public purposes as a citizen and did not complain as a disgruntled employee.

64. In response to plaintiff's complaints, his supervisors, including the named

7

defendants, developed and implemented retaliatory animus through the above-referenced administrative charges which would not otherwise have been brought..

65. In or about the winter of 2001, MR, one employee of the department slashed her boyfriend's face with a bottle and was charged with felony assault.

66. Defendant County of Rockland did not suspend MR for this offense.

67. In November 2002, a second department employee, FB, was charged with endangering the welfare of a child and Driving While Intoxicated [hereinafter "DWI"].

68. Defendants County, Sherwood, Storms and Tower-Bernstein did not suspend FB for these offenses.

69. During the summer 2004, another employee, ET, was charged with criminal trespass and assault of a Rockland County Sheriff.

70. While ET was suspended, she was later reinstated; her salary was returned.

71. ET also reported that her boyfriend, who worked for the County of Rockland, had beaten her up, causing palpable bruising.

72. Defendant County did not investigate or take any action against ET's "boyfriend".

73. The former secretary to defendant's County Executive, RM, had two DWIs while working in that position; this followed her conviction for vehicular manslaughter, which occurred before she was hired as Vanderhoef's secretary.

74. Defendant County has a policy and practice of punishing employees who speak out about matters of public concern.

75. In prior federal litigation, defendant Sherwood has conceded that the defendant County had a policy and practice of not promoting individuals who spoke out on matters of

public concern and strongly discouraged such speech acts.

76. The bringing of charges against plaintiff was motivated by defendants' retaliatory animus and, but for that animus, defendants would not have so charged, prosecuted or punished plaintiff.

77. A federal jury has found that because he spoke out on a matter of public concern, the county of Rockland refused to promote a qualified candidate to the position of Human Rights Commissioner.

78. Defendant County hired MP, whose brother is Commissioner of Personnel for Rockland County, as head of the county's Department of Transportation though he had a prior DWI conviction.

79. Subsequently, he was charged with a felony DWI after causing an accident in which two individuals were injured.

80. This occurred on or about February 20, 2007 and MP remains on the job and has not been suspended.

81. There are numerous other instances of Rockland County employing or retaining high level employees with serious disciplinary or criminal issues.

82. As a consequence of the selective enforcement and retaliation to which he has been subjected by defendants, plaintiff has suffered substantial pecuniary and non-pecuniary damages.

**CAUSES OF ACTION**

83. Plaintiff incorporates paras. 1-82 as if fully re-written herein.

84. By dint of the foregoing, defendants, and each of them, violated plaintiff's right under the First Amendment of the United States Constitution as made actionable

9

pursuant to 42 U.S.C. sec. 1983.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to hear and decide all issues within its province;

c) award to plaintiff and against all defendants compensatory damages;

d) award to plaintiff and against all defendants except the County of Rockland punitive damages;

for the willful and malicious violation of his rights;

e) order defendants to reinstate plaintiff to his position with restoration of owed benefits;

f) award to plaintiff attorneys' fees and costs in this matter and

g) enter any other order the interests of justice require.

Respectfully submitted,

_____
MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO BOX 1005
GOSHEN, NY 10924

COUNSEL FOR PLAINTIFFS

DATED - 4/6/07

10