# EXHIBIT A



### COUNTY OF ROCKLAND
### DEPARTMENT OF PROBATION
Allison-Parris County Office Building
New City, New York 10956
Tel. (845) 638-5544
Fax (845) 638-5648

C. SCOTT VANDERHOEF
County Executive

JACQUELINE STORMES
Director of Probation III

KATHLEEN TOWER-BERNSTEIN
Deputy Director of Probation III

DEPARTMENT OF LAW
'05 APR 19 P4:29

April 18, 2005

Mr. James Gould
P.O. Box 157
Slate Hill, New York 10973-0157

Re: Suspension without pay

Dear Mr. Gould:

Pursuant to the opinion and award of the Honorable Joel Douglas, Ph.D., you will be suspended without pay effective today, April 18, 2005 at 9 a.m. for six months.

Please do not report to work until you have received written notice from me to do so.

Very truly yours,

Jacqueline Stormes
Director

Cc : John Edwards, Esq.
William Burke, Esq.-CSEA Attorney
Georgia Gentile-CSEA President
Steve Chanowsky-CSEA Labor Relations Specialist
Patricia Prendergast- Commissioner of Personnel
Susan Sherwood- Deputy County Executive
Jeffrey J. Fortunato- Deputy County Attorney

Page 1 of 9

STATE OF NEW YORK
COUNTY OF ROCKLAND
VOLUNTARY LABOR TRIBUNAL
------------------------------------------------XXX
In the Matter of the Arbitration Between:
County of Rockland

-and-

CSEA                                                                    **Opinion and Award**
RE: James Gould
------------------------------------------------XXX
<u>Before:</u>      Joel M. Douglas, Ph.D.
              Arbitrator

<u>Date:</u>       April 12, 2005

<u>Appearances:</u>

  <u>For the County of Rockland:</u>
  Jeffery Fortunato, Esq.                         Deputy CTY. Attorney

  <u>For the CSEA:</u>
  William Burke, Esq.                             CSEA Regional Counsel
  Jonathan Edwards, Esq.                          Counsel to Mr. Gould

Pursuant to the Collective Bargaining Agreement (CBA) between the parties, the above stated grievance was heard by this Arbitrator. Hearings were held in New City, NY, on January 6, 2005 and January 24, 2005 during which time both parties were represented by the above appearances and were afforded full opportunity to present evidence, both oral and written, to examine and cross-examine witnesses and otherwise to set forth their respective positions, arguments and proofs. At the initial January 6, 2005 hearing the grievant was represented by CSEA regional counsel William Burke, Esq. At the second hearing Mr. Gould was represented by Jonathan Edwards, Esq. a private attorney retained by the grievant.[1]

Mr. Gould requested that a transcript be taken of these proceedings and made arrangements for its production. A copy of the transcript was given to the undersigned. The County maintained that since the CBA permitted a transcript [Article XVIII - Appendix A "D" (4) the grievant was within his right to request same; however, they maintained that any time lag in obtaining and producing said transcript be attributed to the grievant and that the delay would be considered as an additional suspension without pay. The Union challenged this position and both parties indicated that this issue remained ripe for adjudication in another forum. This Opinion and Award does not address any suspension that may have been served by Gould that was attributable to a lag in obtaining or

---

[1] Since the Union was not involved in the second hearing the arbitrator requested and received payment for the hearing directly from Mr. Gould.

producing the transcript. Should the parties wish to litigate that issue then it behooves them to utilize the contractual grievance procedure to do so. This Opinion, and its accompanying Award, are based on the record as thus constituted.

## ISSUE:

During the course of the hearing the parties stipulated to the following issues:

1. Is the grievant, James Gould, guilty of the charges as set forth in the NOD dated April 28, 2004?

2. If so, is the proposed penalty of termination appropriate?

3. If not, what shall the penalty be?

4. Did the County have reasonable cause to support the thirty-day suspension without pay imposed pursuant to Section 75 of the CSL?

## CHARGES

On April 28, 2004 the grievant was served with an NOD alleging:

Gross Misconduct/Insubordination/ Making a Fraudulent Statement
Specification

On March 25, 2004 while employed as a Senior Probation Officer with the Rockland County Department of Probation, you were given a direct order by your Supervisor to clear your calendar and to attend State Mandated YASI Training to be held in Poughkeepsie, New York, on April 14th and 15, 2004. On March 25, 2004, you indicated to your Supervisor that you would not be there on April 15 because of a personal problem. Your Supervisor responded to you on March 25, 2004. She told you the training on April 15, 2004 was mandatory, that she would not excuse you, and that you were required to be there. Between March 25, 2004 and April 7, 2004, on several occasions you were reminded by your Supervisor that you were required to attend the Mandatory YASI Training on April 14 and April 15, 2004. On April 7, 2004, you once again approached your Supervisor and asked to be excused from the April 15th training. Once again your Supervisor denied your request and ordered you to attend the training. On April 14, 2004, you attended the first day of YASI Training and on that date you falsely informed the instructor that you have been excused by the Department of Probation from the second day of training. On April 15, 2004, contrary to the direct order given to you by your Supervisor, you were absent for the entire day of training. Your conduct in misrepresenting your excusal from the April 15, 2004, training constituted making a fraudulent statement. Your conduct in failing to appear for the April 15, you admitted in a written memorandum to your Supervisor that you had not been excused from attending the April 15, 2004 training.

(See Cty. Exhibit 1)

## STIPULATIONS

During the course of the hearing, and in the presence of the undersigned arbitrator, the parties entered into the following stipulations.

1. There was no service or timeliness issues raised in conjunction with this matter.

2. The parties stipulated that the grievant waived his rights to a CSL §75 hearing and that the undersigned was designated as arbitrator.

## BACKGROUND

Although not stipulated to between the parties, the following fact pattern was developed during the course of the hearing and is set forth below for the convenience of the reader.

1. At the January 6, 2005 grievance hearing Mr. Gould requested an adjournment of five days in order to explore resolution and, if necessary obtain new and/or additional counsel. Said request was granted.[2]

2. Grievant was placed on suspension without pay for the period April 28 2004 thru May 27, 2004.

3. Grievant was placed on leave with pay since the expiration of his suspension.

## DISCUSSION AND ANALYSIS OF THE ARBITRATOR

James Gould is employed by the County of Rockland as a Senior Probation Officer. He began his employment on January 21, 1977 and has been with the DOP since July 23, 1984. With the exception of the instant charges the grievant has never been disciplined. It is the position of the County that Gould made false statements and lied to his supervisor and as a result must be terminated from service. They contend that they can no longer rely on the grievant and that his act of insubordination rises to the level of moral turpitude. The grievant denies the charges and offered justifications and rationales for his behavior.

A review of the time frame involved in this matter is critical for an understanding of the issues associated with the charges. On March 8, 2004 Gould was made aware that he must attend two days

---

[2] As is often the case in matters of disciplinary arbitration the parties in the instant case entered into resolution discussions; however said deliberations proved unsuccessful. It is a long established practice that efforts at resolution which are not subsequently accepted may not be entered into the record as evidence and cannot be considered dispositive.

of mandatory computer training scheduled for April 14 and April 15, 2004. On March 25, 2004 he was directed in writing by his supervisor Jill Lagnado that he must attend said training. Gould then repeatedly spoke to his supervisor in an attempt to excuse himself from said training. On April 14, 2004 Gould appeared for training and at lunch time told the trainers [Tyler] that he would not be attending the scheduled April 15, 2004 training. On the fifteenth Gould apparently reported to his normal DOP duty station and performed his work. He does not contest the fact that he did not attend the April 15, 2004 training.

Norma Tyler, NYS DOP Correctional Alternatives, testified as to the requisite two-day training schedule.[3] She stated that her agency has regulatory oversight for certain statewide programs and she manages the Juvenile Justice Unit. She testified that she did not know Gould prior to this incident and that on April 14, 2004 the grievant approached her and stated that he would not attend the second day of training scheduled for April 15, 2004 and asked for another opportunity to make up the lost time. Tyler then notified the training consultants of Gould's pending absence. Tyler noted that Gould told her that he had an unavoidable conflict back at the office and when asked if the DOP had given him permission to miss training he replied that they had and added that they needed him back at the office. Tyler testified that she believed Gould and the fact that he was needed at the County DOP office.

The training was held in Poughkeepsie, NY and was funded by a grant.[4] Tyler noted that the training was expensive and was designed in part to insure department continuity. Tyler added that when the County signed up for the training the expectation was that they would be there as a total unit. The next day Tyler approached Jill Lagnado. Rockland County Supervising Probation Officer to inquire about the whereabouts of Gould and another absent County Probation officer [White]. Tyler stated that she was "upset" that Lagnado had given consent to Gould to miss the class whereupon she was informed that no such permission had been granted.

Tyler testified that she was led to believe that Gould was required to be back in the New City office on the fifteenth and although she indicated that she might allow some sort of "makeup" training, she said that she made that statement before she knew of Gould's lies. She added that to insure continuity, if there was a makeup Gould would have to take both days over.

Lagnado testified that Gould tried approximately four to five times to be relieved from training. She noted that all requests were denied and that no employees were excused. In terms of continued trust Lagnado stated that "I have some misgivings about his ability to supervise young people." She added "also I do not trust him."

The County maintains that Gould refuses to either take responsibility or accept accountability for his misconduct. Specifically his refusal to acknowledge his insubordination by not attending the mandated training and his classification of Tyler's testimony "in essence as a ... lie" is noted. (TR-154) They insist that from the first day the order was issued that Gould had no intention of attending the April 15th training preferring to hide behind some abstract defense of a need to attend to some as

---

[3] According to Tyler the training known as YASI [Youth Assessment Screening Instrument] was designed to be state-funded and department wide. The intent of the training is to assist in reducing recidivism.

[4] Poughkeepsie is approximately 65 miles from New City, NY.

of yet unidentified "personal business." Had he been more forthright in originally stating the nature of his personal problem then perhaps the entire incident could have been avoided.

Gould himself acknowledges this point when he stated that perhaps he should have told his supervisor the nature of the emergency that he would have to attend to. The personal matter later identified by Gould as controlling was a family commitment to his son "K" who was having a substance abuse problems and was scheduled for a family meeting on the evening of the fifteenth. It was that session that Gould claims could not be rescheduled and that took priority over the Department mandated training.[5]

The issue of "prior knowledge" and whether the Department in general and Jill Lagnado in particular were aware of Gould's problem with his son is speculative; however, the record documents that at one time Gould sought permission and borrowed a DOP drug testing kit for reasons that involved "testing" and the possible application of said kit on his child. Whether this alone qualifies as knowledge of his son's problem remains unknown. The critical element is that in his attempt to shield his family, Gould put his own employment at risk.

In support of their contention that Gould committed an act of insubordination the County relies on Article XX {C} Working Environment of the CBA:

> ... an employee who is given an order by the employee's supervisor is required to obey that order even if the employee believes that the order is in violation of this Agreement or beyond the authority of the supervisor, provided however, that the employee will; not be guilty of insubordination in disobeying such order, if in fact, compliance with the order will expose the employee to a substantial and imminent threat to the employee's health or safety and if the employee brings that fact to the attention of the supervisor at the time the order is disobeyed. (JX # 1)

Since Gould made no effort to notify his employer of his belief that the order was either not lawful, or that it satisfied any of the above stated criteria so that he could ignore same, it was required to be obeyed.

That Gould did not attend the mandated training is not contested. What is at issue is the reasonableness of the proposed penalty of termination and whether the reasons and defenses offered by Gould serve to mitigate his misconduct.

The original reason stated by Gould for not being able to attend the second day of training was to drive his wife home from work at 5:00 P.M. This reason, on its face, borders on the obscure and ambiguous. Why his wife was unable to drive home on that particular day was never mentioned. Therefore, the explanation given by him must stand as the "official reason."

---

[5] As the hearing developed the relevant facts surrounding the personal family commitment became more visible. The son was in a treatment program at Horton Hospital and April 15th, 2004 was a scheduled family meeting night. It appears that the son required one car and therefore the wife lacked a ride. Why the treatment program could not have been switched or other arrangements made for Ms. Gould to attend on her own were never explained.

Diane Gould testified in support of her husband. She repeated the issues with their son and the need to attend a family conference scheduled for the fifteenth of April. She is employed as the Deputy Chief Clerk Family Court in Rockland County and stated that Jill Lagnado was aware of the Gould family problems. She reiterated her son's issues and the impact that it has had on her husbands' employment including the fact that at one time James Gould took two weeks off from work [ December 15, 2002] in order to be with their son "K". Mrs. Gould supported her husband's position that if the problems with their son became known it would be spread through the workplace and County Court house.

Gould denied making any fraudulent statement about having to pick up his wife and submitted that he told all concerned that had personal reasons for not being able to attend the training. He believed that Jill Lagnado understood his issue and reasons. He admits to making mistake in judgement by not being more open about his problem. He admits to conveying to Tyler that he could not attend Day Two of the training but denied telling her that he had a prior approved work commitment. The testimony of Tyler was credited over that of Gould. She had no reason to be less than truthful when she stated that Gould "... led me to believe" that his absence on the 15th was sanctioned.

The record must reflect that the instant case is not about the issue of mandated training. The relevant issue is the insubordination exhibited by Gould and his stated reasons why he was unable to comply with a lawful order. The reasons given and the behavior of Gould is difficult to comprehend. It is not for Gould to determine which training he would be available for. Nor is it within his prerogative to offer to attend training for part of a day and when that suggestion is rejected to tell his supervisors that they lack the flexibility to meet his needs.

Gould also attempted to claim that other employees were somehow excused from this training. He submits that APO Donna Stiner and that PO White did not attend the requisite training and were not terminated from their employment. The record does not support that contention. There is no indication in the record as to the disposition of the Stiner matter. With respect to PO White the record indicates that she was served with a Notice of Discipline which she settled with an admission of guilt, a suspension without pay of thirty days, and incident specific probation for a period of one year. Although Gould at times attempted to "latch on" to the White scenario, the differences between the two are noted. In addition White admitted to misconduct and voluntarily accepted a penalty without a hearing while Gould has never admitted to any misconduct whatsoever.

It is arguable that a charged employee seeking to "piggy back" on a penalty offered another co-worker must first come forth with an admission for some sort in order to activate that process. 'Gould's refusal in the area is significant. The claim by Gould that somehow the County engaged in disparate treatment is expressly rejected.

Gould attempted to portray a portrait of an "up front" employee. He stated that he knew that his supervisor would be present at the hearing and that since he already informed Tyler and others that he would not attend the training he was not attempting to be surreptitious in any manner. That indeed may be correct yet Gould is not charged with lying about his attendance and therefore this theory is not relevant to these proceedings and findings.

---

[6] There is some indication in the record of a letter of apology written by Gould on April 23, 2004 and sent via email.

The demeanor of the grievant at the hearings was observed by the undersigned and did not reflect a man who exhibited a sense of remorse. Gould was contentious and showed no understanding of the nature or depth of his misconduct. The only evidence of contrition displaced by Gould was that he should have been more up front with his supervisors about his family problems. That does not exactly qualify as remorse for the committed misconduct but instead goes to the area of his defenses.

The only issues in dispute were - - - did an actual act of insubordination occur and, - - - did he issue a fraudulent statement. The record evidence supports the finding that the answer to both of these issues is found in the affirmative. For Gould to seek refuge behind "personal reasons" is his prerogative - - yet if that is the situation then he must either respect the confidence that his family seeks or accept the penalty that is associated with the consequences of his actions. Gould chose neither option.

There is no obligation on the part of the County to accommodate an employee for the supposed needs of his wife. Unless there is a medical matter protected by FMLA or ADA the County was under no imperative to change the training schedule for the stated reason of having to pick up one's wife after work at 5:00 P.M.

The County further argues that as a Senior PO Gould works with impressionable youths and that his insubordination renders him unfit to perform his duties. Additionally the record notes that supervisor Lagnado stated that she cannot trust Gould. The County further argues that the misconduct displayed by Gould rises to the level of moral turpitude.

Penalty

Having found Gould guilty of both charges, the issue of penalty must be addressed. The County vigorously argued for termination while the grievant maintained that no penalty was warranted. Although the proven misconduct is severe, three conditions mitigate against termination. First, Gould is the possessor of a twenty-eight-year County work record. In all that time period Gould was never charged with any act of misconduct or incompetence. Accordingly it must stand in support of his continued employment. Second, based on the instant fact record, the dictates of progressive discipline cannot withstand Gould's termination. Third, the acceptance of the White thirty day penalty is noted.

The parties are familiar with the labor relations adage of "work now grieve later." It was not for Gould to make the unilateral decision to ignore the direct lawful order of his supervisor and take it upon himself to miss the mandated training. By his refusal to attend training, no matter what the reason was, he committed an act of insubordination that rises to the level of discipline.

Grievant Gould is guilty of Gross Misconduct and premeditated insubordination as by his own admission on at least five or six different occasions he attempted to be excused from mandated training and even though each time his request was refused he still opted not to attended as directed. Additionally Gould is guilty of the issuance of a false statement when he led Tyler to believe that his forthcoming absence on April 15th either had the tacit approval of his supervisors and agency and that he was needed back in the DOP office for departmental work. Based on these findings there was just cause for discipline and probable cause to suspend his employment.

What must Gould do to continue to remain as a member of the DOP? Gould is to adhere to all

workplace rules or be subject to further discipline. Although the penalty set forth in this <u>Opinion and Award</u> does not reach the termination sought by the employer, the concept of constructive notice must be strictly adhered to. It is hoped that this that this decision and its ordered discipline will serve as an end to his disciplinary problems. If not, then Gould must be aware that he has now had, and failed an opportunity to prove himself. Should further misconduct occur, then he must be prepared to take the full consequences of his actions. If he fails to do so it may lead to termination. He is in control of his own future.

Therefore, based on the record, and in accordance with the CBA, the undersigned awards as follows:

# AWARD

1. The grievance is denied. The grievant, James Gould, is guilty of Gross Misconduct/Insubordination and Making a Fraudulent Statement as set forth in the NOD dated April 28, 2004.

2. The requested penalty of termination is not appropriate.

3. The appropriate penalty is a suspension without pay of six months. This suspension shall not be offset by any penalty previously served in conjunction with the disciplinary components of this matter.

4. The County had reasonable cause to support the thirty-day suspension without pay imposed pursuant to Section 75 of the CSL.

_____
JOEL M. DOUGLAS, Ph.D.
ARBITRATOR
April 12, 2005

STATE OF NEW YORK
COUNTY OF WESTCHESTER

I, JOEL M. DOUGLAS, DO HEREBY AFFIRM UPON MY OATH AS ARBITRATOR THAT I AM THE INDIVIDUAL DESCRIBED IN AND WHO EXECUTED THIS INSTRUMENT WHICH IS MY AWARD.

_____
JOEL M. DOUGLAS, Ph.D.
ARBITRATOR
April 12, 2005