UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES GOULD,

      Plaintiff,

vs.                                                                    **07 CIV 2837 (CLB)**

COUNTY OF ROCKLAND,  SUSAN SHERWOOD,
sued in her individual capacity, JACQUELINE STORMES,
sued in her individual capacity, KATHLEEN
TOWER-BERNSTEIN, sued in her individual capacity,
JILL LAGNADO, sued in her individual capacity,

      Defendants.
------------------------------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO **DEFENDANTS' MOTION TO DISMISS**

Plaintiff respectfully submits this Memorandum of Law in opposition to

defendants' motion to dismiss the Complaint.

### STATEMENT OF FACTS

As set forth in the Complaint, the facts follow:

Plaintiff, James Gould [hereinafter "plaintiff" or "Gould"], is a former

employee of the County of Rockland Department of Probation who resides within

this judicial district.   Defendant County of Rockland [hereinafter "the county"] is

a municipal corporation which conducts business within this judicial district and

may sue and be sued in this forum. Defendant Susan Sherwood [hereinafter

"Sherwood"] served as Chief of Staff for Rockland County Executive C. Scott Vanderhoef;. Defendant Jacqueline Stormes [hereinafter "Stormes"] was Director or Acting Director of the Rockland County Department of Probation. Defendant Kathleen Tower-Bernstein [hereinafter "Tower-Bernstein"] was a supervising probation officer employed by the Rockland County Department of Probation. Defendant Jill Lagnado [hereinafter "Lagnado"], plaintiff's immediate supervisor, served as a supervising probation officer [for the Juvenile unit] in Rockland County's Department of Probation.

**Plaintiff's Work History**

Plaintiff commenced working for the defendant County as a custodian on January 21, 1977.  Between January 1978 through July 1984, plaintiff worked as a mental health worker and case manager for the Rockland County Department of Mental Health.  In July 1984, plaintiff commenced working as a probationary trainee in the Juvenile Unit of the Rockland County Department of Probation [hereinafter "the Department"].   One year later, plaintiff became a probation officer within the same department.  Plaintiff remained a probation officer between July 1985 and July 1989, when he commenced an 18 month leave of absence outside of government.  In February 1991, the County re-employed plaintiff as a Probation Officer, a civil service position.  In April 2003, defendant Stormes promoted plaintiff from an eligibility list of the position of senior probation officer.

2

Plaintiff's probation lasted six month, at which time he became a tenured senior probation officer.

Defendant Lagnado served as plaintiff's supervisor following his April 2003 promotion.

**Protected Speech**

In December 2002, the Department held a Christmas Party during work hours. After the party, plaintiff complained to Tower-Bernstein, the department's sexual harassment officer, that he was offended that a female employee had groped him in public. Defendant Tower-Bernstein laughed off this complaint and did not request that plaintiff fill out any complaint form.

Between June-August 2003 and after his promotion, one of his subordinates complained to plaintiff that a colleague had sexually harassed her, been found to have so behaved and refused to attend mandated counseling with no consequence. This subordinate also complained to plaintiff that defendants Stormes and Sherwood had recommended that this employee be appointed as a trustee at Rockland Community College.

After plaintiff received this complaint, two other staff members complained that at
the December 2002 Christmas Party, they had been subjected to racial name-calling clearly prohibited by departmental and County policy and that their

3

antagonist had not been disciplined.  A fourth employee indicated to plaintiff that he too had been groped at the Christmas Party and asked plaintiff to seek redress for him.

After receiving these complaints, plaintiff told Tower-Bernstein that these subordinates were upset that the County had not taken any remedial action.  Again, Tower-Bernstein brushed plaintiff aside and questioned why anyone would be offended by the reported conduct.

In November 2003, the county held a training session for plaintiff's department.  When the trainer began verbally attacking one of plaintiff's colleagues, plaintiff interceded and defended his colleague. The same day,  Tower-Bernstein told plaintiff that his intercession was the wrong move and stated that plaintiff needed to "learn how to play the game" and that he "better not piss off the County Executive's Office anymore."

In March 2004, plaintiff and another co-worker went to see Stormes to arrange an annual St. Patrick's Day party.   Stormes disallowed the party and stated that "Irish people don't know how to behave themselves at a party," a reference to the 2002 Christmas Party. Plaintiff responded that he had raised numerous complaints after that party to management without response. He also noted that Tower-Bernstein she was the department's sexual harassment officer and had never acted on complaints made about the December 2002 party.  Tower-Bernstein

4

then told plaintiff that management did not want him to bring complaints to its attention, but wanted him simply to do his job.

On or about April 14, 2004, defendant Lagnado denied plaintiff his request to leave a training session an hour early to attend a medical appointment for his son.

In or about April 23, 2004, plaintiff went to see defendant Sherwood. Plaintiff told defendant Sherwood that he had *strong concerns about illegal departmental practices going on upstairs, a reference to the Probation Department*.  Sherwood became irate, told him to stop being a cry baby, go upstairs and be happy he had a job.

### Departmental Conduct

On Saturday, April 24, 2004, plaintiff was in Cortland, New York with his daughter for a basketball competition.   While in Cortland, plaintiff asked a young man for directions to a gay bar as he wanted to pursue two men who had harassed him.   Plaintiff initiated no sexual contact with the young man he asked for directions. [1]

On Wednesday, April 28, 2004, defendants suspended plaintiff for failing to attend the second day of a training session.  This followed the New York State Probation Trainer's advice to plaintiff at the first day of training that there were

---

1  No contrary finding has ever been made in any forum.

other days available to make up the second day.   In an administrative decision unreviewed by any court, in April 2005, plaintiff was found guilty of insubordination on this charge and lost seven and one-half months pay.

In November 2004, defendants County and Stormes filed disciplinary charges claiming that plaintiff had engaged in inappropriate conduct when he allegedly propositioned an under-age youth in Cortland, New York on April 24, 2004.

In another decision unreviewed by any court, in July 2006, a hearing officer found plaintiff guilty of offenses relating to this incident and the County terminated his employment effective November 2005.  Stormes then terminated plaintiff, adopting the hearing officer's recommendation.

Defendant Sherwood directed the county's independent investigation into the Cortland County incident.  After the Cortland County District Attorney's office declined  to pursue criminal charges against plaintiff, upon defendants' instigation and substantial pressure, that office instigated criminal charges against plaintiff. Critical to this pressure were false comments made to Cortland police officers, the DA and the boy's family  by county investigators, Cooney and Moody, to the effect that  the County, referring to the individual defendants, had "suspicions" about plaintiff for a long time. Plaintiff pled guilty to a violation to resolve these

6

criminal charges. [2]  Plaintiff was not ordered to "stay away from children while serving his sentence" as defendants claim without any support.

During the course of its investigation into plaintiff and at the instance and direction of Sherwood, the County obtained, without any notice to plaintiff or his consent, his personal and cell phone records.  County agents spoke with numerous past clients who plaintiff served. These past clients uniformly denied that plaintiff engaged in any sexually untoward  or inappropriate conduct toward them.

During the course of the investigation into plaintiff, County and its agents learned that the account provided by the alleged victim of plaintiff's conduct in Cortland County had provided substantially inconsistent versions of events. Despite knowing this, the County and Stormes brought disciplinary charges against plaintiff.

Before commencing its investigation of the events in Cortland, the County, acting through defendant Stormes, asked plaintiff for his version of events.  In making this request,  Stormes never suggested that she would or might share plaintiff's writing with police authorities in Cortland.  Again, without any notice to plaintiff and without obtaining his consent, Stormes and Sherwood forwarded a copy of plaintiff's statement to police authorities in Cortland.

In prosecuting plaintiff, defendants pressured plaintiff's union to agree to

2  In New York, a "violation" is not a crime and is not automatic cause for loss of a civil service job.

7

hold the administrative hearing in Cortland, New York.   The plain language of the contract stated that any such hearing be held on property of the County of Rockland, in Rockland County.  Despite the contractual requirement that both parties select the hearing officer and before plaintiff even had approved legal counsel, defendant County *selected the hearing officer* for plaintiff's second disciplinary hearing.

The Complaint alleges that defendants accorded plaintiff the harsh treatment they did in retaliation for his protected first amendment activity.  In going to management on behalf of employees who were complaining about  sexual harassment and racial/ethnic name-calling, plaintiff sought to vindicate public purposes as a citizen and did not complain as a disgruntled employee.

The Complaint alleges that "[i]n response to plaintiff's complaints, his supervisors, *including the named defendants*, developed and implemented retaliatory animus through the above-referenced administrative charges which would not otherwise have been brought. [Complaint at para. 64].

In support of this claim, the Complaint then sets forth a number of instances in which the  County has reacted with much greater leniency to employee misdeeds:

"65.  In or about the winter of 2001, MR, one employee of the department slashed her boyfriend's face with a bottle and was charged with felony assault.

66. Defendant County of Rockland did not suspend MR for this offense.

67. In November 2002, a second department employee, FB, was charged with endangering the welfare of a child and Driving While Intoxicated [hereinafter "DWI"].

68. Defendants County, Sherwood, Storms and Tower-Bernstein did not suspend FB for these offenses.

69. During the summer 2004, another employee, ET, was charged with criminal trespass and assault of a Rockland County Sheriff.

70. While ET was suspended, she was later reinstated; her salary was returned.

71. ET also reported that her boyfriend, who worked for the County of Rockland, had beaten her up, causing palpable bruising.

72. Defendant County did not investigate or take any action against ET's "boyfriend".

73. The former secretary to defendant's County Executive, RM, had two DWIs while working in that position; this followed her conviction for vehicular manslaughter, which occurred before she was hired as Vanderhoef's secretary.

78. Defendant County hired MP, whose brother is Commissioner of Personnel for Rockland County, as head of the county's Department of Transportation though he had a prior DWI conviction.

9

79.  Subsequently, he was charged with a felony DWI after causing an accident in which two individuals were injured.

80.  This occurred on or about February 20, 2007 and MP remains on the job and has not been suspended."

The complaint also alleges that "74. Defendant County has a policy and practice of punishing employees who speak out about matters of public concern. 75.  In prior federal litigation, defendant Sherwood has conceded that the defendant County had a policy and practice of not promoting individuals who spoke out on matters of public concern and strongly discouraged such speech acts." Moreover, in further support of the county's retaliatory practices, the complaint recites that "77.  A federal jury has found that because he spoke out on a matter of public concern, the county of Rockland refused to promote a qualified candidate to the position of Human Rights Commissioner."

On the bases of these factual allegations, plaintiff alleges that defendants, and each of them, violated plaintiff's right under the First Amendment of the United States Constitution as made actionable pursuant to 42 U.S.C. sec. 1983 and seeks various legal and equitable relief, including reinstatement.

## LEGAL ARGUMENT

A.  **STANDARD FOR DECIDING MOTION TO DISMISS**

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all

10

of the well-pleaded facts as true and consider them in the light most favorably to plaintiffs. *See*, Scheur v. Rhodes 416 U.S. 232, 236 (1974), *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183 (1984); Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).

A district court must deny such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Stewart v. Jackson & Nash, 976 F.2d 86, 87 (2d Cir. 1992), quoting Conley v. Gibson, 355 U.S. 41, 45-56, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

On a motion to dismiss, as this Court has recently reiterated, the facts are taken as plead in the Complaint, not as restated to their interest by defendants. **See**. American Association of Physicians Specialists, Inc. v. Wing, et al. (06 Civ. 14253)(CLB)(June 22, 2007). Additional "facts" upon which defendants wish to rely are to be ignored.. As this Court recently noted, "In making these arguments, Defendants of necessity ask the Court to look beyond the pleadings and assess the merits of Plaintiff's claims. A Rule 12 motion is not an effective means of doing this. Reading the Amended complaint in the light most favorable to the Plaintiff, as the Court must on a motion to dismiss, it is clear that Plaintiff pleads facts contrary to those asserted by Defendants." Id.

Here, contrary to these basic rules, defendant repeatedly cites to its Answer in support of "facts" either not in the Complaint or contrary to those in the

11

Complaint and then predicates its argument upon these. This is plainly improper and the motion should be denied on this basis alone.

Examples of this abound: first, the Complaint does not allege that plaintiff "invited the boy to return to his hotel room". The Complaint does not aver that plaintiff was "rubbing his penis through his pants and had an erection." The Complaint does not allege that Plaintiff "followed the boy until Plaintiff observed the boy seeking assistance from some neighbors." And, none of these "facts" were found in a prior administrative decision which is not entitled to any preclusive weight in this Court.

Likewise, the defendants' intimation that plaintiff was ordered by the Cortland City Judge to not have contact with children is baseless. No such order was ever entered.

Defendants' recitation of the facts underlying the prior disciplinary matter are likewise beyond the scope of the Complaint and disputed.

### B. <u>**COLLATERAL ESTOPPEL DOES NOT APPLY**</u>

.    While defendant asks this Court to apply collateral estoppel, in New York, that doctrine bars consideration of an issue when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to

support a valid and final judgment on the merits." <u>Carney v. Philippine,</u>

332, F.3d 163 (2d Cir. 2003), <u>Hoblock v. Albany County Bd. of Elections</u>, 422

F.3d 77, 94 (2d Cir. 2005) (quoting <u>Moccio v. N.Y. State Office of Court Admin.</u>,

95 F.3d 195, 200 (2d Cir. 1996), <u>O'Hara v. Memorial Sloan-Kettering Cancer</u>

<u>Center</u>, 79 Fed. Appx. 471, 2003 U.S. App. LEXIS 22074 (2d Cir. 2003).

Defendants claim that <u>Burkybile v. Board of Education of the Hastings-on-</u>

<u>Hudson Union Free School District, et al.</u>, 411 F.3d 306 (2d Cir. 2005) requires

this Court to give preclusive effect to unreviewed arbitral findings.  In fact,

<u>Burkybile</u> explicitly reserved this issue ["...we need not decide here whether

arbitrations have preclusive effect...Instead, we hold that because the Section 3020-

a hearing was an administrative adjudication, we must give its

findings preclusive effects"].  In reaching the latter conclusion, the Second Circuit

found decisive the fact that a state agency administers the 3020-a process,

something which distinguished such proceedings from an arbitration and likened

it to that recognized in <u>University of Tenn. v. Elliott</u>, 478 U.S. 788, 799 (1986).

The Second Circuit applied the full faith and credit clause in <u>Burkybile</u> because

the State Education Department administers the 3020-a process.  As the Second

Circuit explicitly wrote, "Accordingly, we apply the <u>Elliott</u> test, which states that

"*when a state agency acting in a judicial capacity resolves disputed issues of fact*

*properly before it which the parties have had an adequate opportunity to litigate,*

13

*federal courts must give the* agency's *fact-finding the same preclusive eff*ect to which it would be entitled in state courts." [emphases added].  The same logic does not apply here: the arbitrations were not "administered by a state agency" and thus any findings of fact therein recommended by the arbitrator - in the second instance solely selected by the county - do not warrant any preclusive effect.

Another reason precludes grant of preclusive effect to any findings made by the hearing officer.  The ultimate decision-maker in this case was Stormes, the head of plaintiff's agency.  She made the determination to terminate the plaintiff. The complaint alleges that she intended to retaliate against plaintiff on behalf of his protected speech and was, inferentially, biased against plaintiff.  As in Locurto, supra. at 171, at this stage in the proceeding [this Court is obliged to accept plaintiff's allegation as true], Gould "did not receive hearings before a neutral arbitrators] and collateral estoppel does not attach..."

Indeed, this Court need not give preclusive effect to any of the adjudicatory bodies which defendants repeatedly reference.  None provided a full and fair opportunity to litigate contested issues when measured against the discovery procedures available in this Court. See, Locurto v. Giuliani, 447 F.3d 159, 171 (2d Cir. 2006).  And, certainly none considered, in reaching their conclusions, whether the entire proceeding against plaintiff was ill-motivated or informed by procedural irregularities intended to disfavor plaintiff.  In this light, their findings

14

are not useful in defending the claims actually before this Court. Plaintiff has

inarguably never litigated the issues which lie at the heart of this lawsuit: whether

he was retaliated against by the defendants in the bringing of their several

disciplinary charges.  That is his claim in this Court.

Plaintiff shall demonstrate that, but for his protected speech acts, the

defendants would not have conducted themselves as indicated and that he never

would have been terminated.

Contrary to defendants' protestations, plaintiff claims that absent his

protected speech, the County would not have invested significant resources in re-

doing an investigation already concluded by the Cortland Police Department.

Defendants would not have overlooked the gross inconsistencies in the statements

made by the juvenile in this case or his admitted complicity in the interaction with

plaintiff. [3]

Under these circumstance, there is no Second Circuit authority precluding

plaintiff from litigating his retaliation claims in this Court or requiring him to have

---

3  The evidence adduced at the administrative hearing was that the young man was struggling
with his sexual identity, believed himself to be gay before any interaction with the plaintiff, that
he fantasized upon being approached by the plaintiff that Gould was from New York and would
provide the young man a "ticket" out of Cortland and help him realize his
then current dream of a career as an actor in New York City.  In this context, the young man, not
Gould, prolonged their conversation and shared personal matters about which Gould made no
inquiry whatsoever.  There was never any evidence that Gould got out of the driver's seat of is
car as he asked this young man if he knew where a gay bar was in the area. Gould had previously
related that he had just had an unpleasant encounter with two gay men and wanted to follow
them to what he understood was their destination.

raised those claims in an inferior forum which there is no discovery and no right to

a jury trial or damages.  Cf., Dolan v. Roth, 170 Fed. Appx. 743, 2006 U.S. App.

LEXIS 5906 (2d Cir. 2006)(litigant who raised retaliation issues and lost in state

court proceedings barred from re-litigating such issues in federal case).

 Nor is it notable, as defendants claim, that plaintiff raised no such issues in

these forums.  It was his right not to and defendant has no contrary authority.  See,

Savoy of Newburgh v. City of Newburgh, et al., 2007 U.S. App. LEXIS 13969 (2d

Cir. June 13, 2007)(federal plaintiffs were not obligated to raise retaliation

claim in defending against State Court proceeding initiated by City of Newburgh

nor foreclosed from bringing retaliation claims in federal court for the first

time).

 Defendant claims that plaintiff cannot dispute that defendants would have

taken the **same adverse employment action** even in the absence of protected

speech.  This is fallacious and, of course, plaintiff can dispute this.  Assume for

purposes of argument that before any of the events which allegedly triggered

discipline here, the county defendants, or some of them, advised Gould

that they intended to find some reason to fire him.  Assume further that Gould

committed the acts of which he was found guilty here.  Assume further Gould

could establish that others who committed more or equally  serious violations of

law were not punished and that Gould claimed that his punishment was premised

not on his acts, but on retaliatory animus.  Certainly, Gould would have the right to

litigate his retaliation claim in that context.  This is precisely our fact pattern absent

the direction admission from a defendant. However, in light of the comments

defendants did make toward Gould and the disparate treatment he has alleged,

defendants' motion to dismiss is equally without legal basis and deciding it in

defendants' favor would require resolution of disputed issues of intent and motive.

C.  **THE COUNTY WAS NOT REQUIRED TO TERMINATE PLAINTIFF FOR COMMITTING A VIOLATION**

On page 9 of their Brief, defendants contend that "the prior proceedings and

Plaintiff's own guilty plea establish that his employment would have been

terminated for egregious misconduct regardless of any improper motive."  This is

fundamentally a fact question which cannot be resolved on a motion to dismiss.

The Complaint alleges that numerous county employees committed far more

serious transgressions of law than a violation yet were not disciplined at all by the

County.  Moreover,  the Complaint alleges a widespread pattern of retaliation

against employees who speak out on matters of public importance and repeated

warnings by the defendants themselves that plaintiff shut up and simply do his job.

On these bases alone, this Court cannot now determine that plaintiff can prove no

set of facts in support of his First Amendment claim.  Plaintiff has never admitted

engaging in "criminal conduct" toward any minor and there is no such finding

by any court of competent jurisdiction.

### D. __THE COMPLAINT DOES ALLEGE THE REQUIRED CAUSAL NEXUS__

Contrary to defendants' claims, the Complaint plainly recites both the

allegedly protected speech in which plaintiff engaged and the consequences of that

speech.  Defendants submit that the complaint does not allege any direct or

circumstantial evidence that could establish the requisite causal connection.  This

suggests defendants have not read the Complaint which, on the contrary, plainly

alleges that defendants instituted a policy of retaliating against persons who spoke

out about matters of public concern, explicitly warned plaintiff not to do so

and then disparately disciplined him when he failed to heed these warnings.  A

clearer exposition of causal nexus is hard to imagine.

Defendants ignore the English language in stitching together their claim that

when he told Sherwood of "illegal practices" going on upstairs, plaintiff might

have been referring to matters which did *not* fall within the scope of public concern

and constitutional protection.  The complaint's use of the words "illegal

departmental practices" mimic what plaintiff told Sherwood before she launched

her tirade against him and told him he was lucky to be employed.

Though seeking dismissal on the pleadings, defendants  next claim that even

18

though there was a one or two month period between plaintiff's protected speech and the bringing of charges against him, this is insufficient "proof" of nexus or causality because the department also brought charges against someone else. First, the Complaint does not make an allegation about the treatment of the other person defendants cite. Accordingly, that treatment is not before the court on a motion to dismiss. Second, this "defense" is plainly fact-intensive and cannot predicate dismissal. That the County delayed filing charges or taking ultimate action against plaintiff until well after his protected speech does not mean that there is no set of facts which could support a verdict for plaintiff. Here, it is alleged that the individual defendants developed an intent to retaliate against plaintiff in the spring 2004 when he engaged in several episodes of protected speech. Within two months, defendants brought their first set of charges against him and set in motion the investigation which eventuated in additional charges. Cf., Burkybile, supra. (holding in granting defendants' motion for summary judgment that passage of more than a year between Burkybile's accusations...and the initiation of disciplinary charges, combined with other factors evidencing school district's "good faith" toward plaintiff "destroy any inference of retaliatory animus"). Here, rather than a showing of good faith, the Complaint recites numerous irregular acts by defendants which demonstrate the opposite.

According to plaintiff's theory, the County would have engaged in none of

19

this but for his protected speech.  In support, plaintiff points to the county's entirely different response to numerous other serious incidents of misconduct by other employees who did not engage in protected speech.

Citation to <u>Burkybile v. Board of Education of the Hastings-on-Hudson Union Free</u> <u>School District</u>, 411 F.3d 306, 314 (2d Cir. 2005) does not assist defendants on a motion to dismiss: there, defendants did not obtain dismissal of plaintiff's claims on a Rule 12 motion, but rather on a motion for summary judgment following discovery.  Whether Rockland County "thoroughly" investigated anything here is at issue, as is the county's conduct following investigation.  According to the Complaint, during its investigation in this matter, defendants learned that [a] Gould's juvenile accuser had repeatedly contradicted himself and told radically different stories and [b] Gould's clients had denied that plaintiff ever engaged in any sexual improprieties toward them.

Rather than dropping this matter based on these revelations, the Complaint alleges that county decision-makers were bent on destroying plaintiff and persisted in administrative proceedings.  The Complaint further alleges that those proceedings were irregular in several critical regards, including the selection of the hearing officer and the location of the hearing.

E.  **<u>DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY</u>**

20

A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Swietkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002).   Rule 8 the F.R.Civ.P. requires a short, plain statement showing an entitlement to relief and notice pleading [with liberal discovery] is favored in federal courts. Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998).

The challenged Complaint places each defendant on notice of plaintiff's allegations and allow each to defend against his claim that s/he retaliated by participating in a scheme calculated to punish plaintiff for protected speech.

Defendants submit that since only certain named defendants were directly responsible for the adverse actions which befell plaintiff, the other individuals cannot be held liable.  But, this, too, misstates the law: as long as the named individuals knowingly and personally participated in a course of conduct intended to violate plaintiff's constitutional rights, they can be held liable. Provost v. City of Newburgh, 262 F.2d 146, 155 (2d Cir. 2001). And, the Complaint sufficiently alleges this level and character of  personal involvement by each of the named defendants.

If, as is alleged, the defendants rigged the administrative hearing, disregarded exculpatory evidence and proceeded based on retaliatory animus, they are not entitled to qualified immunity. The law was clearly established in 2005 that supervisors could not act out retaliation on their subordinates for embarrassing

revelations which related to matters of public importance. "It can never be objectively reasonable for a government official to act with the intent that is prohibited by law." <u>Locurto v. Safir</u>, 264 F.3d 154, 170 (2d Cir. 2001).

Any  argument in favor of dismissal on this ground is inextricably linked to issues of motive and this warrants denial of qualified immunity. <u>See</u>, <u>Locurto</u>, <u>supra.</u> at 169.

### <u>CONCLUSION</u>

**For the above stated reasons, the defendants' motion to dismiss is due to be denied in its entirety.**

Respectfully submitted,

_____
MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO BOX 1005
GOSHEN, NY 10924

COUNSEL FOR PLAINTIFFS

DATED - 6/29/07